| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) NO. 3:18-CR-167-TRM |
| | ) |
| CHRISTINA ERIN MYERS | ) |

### MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE AND SENTENCING MEMORANDUM

Comes the Accused, Christina Erin Myers, by and through counsel, and submits this Motion for Downward Departure and/or Variance and Sentencing Memorandum for this Honorable Court's consideration in Ms. Myer's sentencing hearing. In support of which the Defendant would show as follows:

#### I. FACTUAL ALLEGATIONS

Christina Erin Myers was charged on October 16, 2018 in a six-count indictment. Counts one through four charged Mrs. Myers with Wire Fraud in violation of 18 U.S.C. §1343, Count five charged Mrs. Myers with money laundering in violation of 18 U.S.C. §1957, and Count six charged Mrs. Myers with money laundering in violation of 18 U.S.C. §1956. On November 26, 2019, Mrs. Myers pled guilty to Count one and Count Six of the Indictment. Since that time, Mrs. Myers has remained on pretrial release without issue pending sentencing.

#### II. SENTENCING GUIDELINE ANALYSIS

The Pre-Sentence Investigation Report (PSR) was completed on March 2, 2020. The PSR indicates a base offense level of 7 for Count 1, pursuant to §2B1.1(a)(1). The PSR also made upward adjustments as negotiated and included within the plea agreement of twelve points pursuant to §2B1.1(b)(1)(G), four points for financial hardship pursuant to §2B1.1(b)(2)(B), and two points for vulnerable victims pursuant to §3A1.1(b)(1). The PSR also included an additional two points for abuse of a position of private trust pursuant to §3B1.3. This resulted in a total offense level for Count One of 27. As to Count Six, the PSR indicates a base offense level of 27 pursuant to U.S.S.G. §2S1.1(a)(1) and §2B1.1(a)(1). The PSR applied

an upward adjustment of two points pursuant to U.S.S.G. §2S1.1(b)(2)(B), resulting in a total offense level of 29 for Count Six. Following the 3-point reduction for Acceptance of Responsibility pursuant to §3E1.1 (a) and (b), the PSR indicates an Adjusted total offense level of 26 for Mrs. Myers. Mrs. Myers has no prior criminal history, placing her in criminal history category I. Accordingly, Ms. Myer's advisory guideline range set out within the PSR is 63-78 months.

The Defendant has objected to the upward adjustment for abuse of a position of private trust pursuant to U.S.S.G. §3B1.3, and accordingly would assert that the appropriate offense level is 24, resulting in an advisory guideline range of 51-63 months.

It is also significant to note that Mrs. Myers entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) following extensive and lengthy plea negotiations. While not binding on the Court, as a part of the negotiation and plea in this case, the parties stipulated to what sections of the guidelines and particularly which enhancements would apply, including a specific loss amount, the existence of financial hardship for five or more victims, and that the defendant should have known the victims were vulnerable. Parties did not include an enhancement for abuse of private trust pursuant to §3B1.3 which was applied within the PSR. The Defendant has objected to the enhancement, however Mrs. Myers would ask the Court to honor the spirit of the agreement as negotiated by parties and entered and apply a total offense level of 24, resulting in an advisory sentencing guideline range of 51 to 63 months. Additionally, Mrs. Myers would ask that this Honorable Court further vary below this advisory range in establishing a sentence that is sufficient but not greater than necessary in this case.

### III. PERSONAL BACKGROUND

Christina Myers is one of three daughters born to Anita and Kenneth Wilmouth. Mrs. Myers was born in Tacoma, Washington, however, has lived in East Tennessee almost her entire life. Mrs. Myers graduated from Lenoir City High School in 2000. Mrs. Myers majored in Journalism at the University of Tennessee where she obtained her Bachelor of Science degree. Mrs. Myers is 38 years old and has been married to her husband Jason Myers since 2003. They have three daughters who are 11, 14, and 16 years old. Mrs. Myers is actively involved in her community and church through individual efforts and as a parent of three active daughters. She does not have a history of alcohol or substance abuse. As many

2

members of her community will attest to Mrs. Myers is known in the community to offer her time, presence, and assistance as a fellow parent and caregiver. Prior to the instant charges, Mrs. Myers has never been charged or convicted of any criminal offense.

## IV. <u>CHRISTINA MYER'S CHARACTER</u>

The following individuals have offered letters in support of Christina Erin Myers, which are attached as Collective Exhibit A to this memorandum:

   a. <u>Rev. Thomas Lee</u>, Pastor;
   b. <u>Brooke Horton</u>, Teacher and friend;
   c. <u>Emily R. Tenry</u>, Childhood friend and fellow parent;
   d. <u>Sandra M. Towns</u>, Teacher (retired) and fellow volunteer;
   e. <u>Rev. Dr. Richard DeMerchant</u>, Senior Adult and Pastoral Care Minister;
   f. <u>Robert Shane Wells</u>, Teacher, Coach and family friend;
   g. <u>Kala Poole</u>, Childhood friend and fellow parent;
   h. <u>Whitney Needham</u>, Registered Nurse and fellow parent;
   i. <u>Melissa L. Roberts</u>, Air Force (retired), longtime friend and fellow volunteer;
   j. <u>Jennifer Colvin</u>, Friend and fellow parent;
   k. <u>Courtney T. Kline</u>, Owner/Operator of Legacy AllStars Cheer and friend;
   l. <u>Rev. Andy Minton</u>, Middle School Student Minister;
   m. <u>Anita Wilmoth</u>, Social Service Director (retired); and Mother;
   n. <u>Ken Wilmoth</u>, Air Force (retired,) Deacon and Father;
   o. <u>Erica E. Oakes</u>, Registered Nurse and Sister;
   p. <u>Amanda E. Flenniken</u>, Accountant and Sister; and,
   q. <u>Jason Myers</u>, Education Administration and Husband.

These individuals with personal knowledge of Christina Erin Myers paint a picture of a devoted mother, daughter, and sister as well as a longtime community volunteer, a vigorously involved parent of three active girls, and an individual that epitomizes the criteria for a significant downward departure.

The testimonial letters from the above individuals creates a record that Mrs. Myers' character and past behavior is such that the instant offense conduct is a vast deviation from an otherwise law abiding, compassionate, and generous life. The following excerpts highlight just a few anecdotes regarding Mrs. Myers from those who know her best:

a. <u>Rev. Thomas Lee</u> –
   "…, I have known Christy for over 20 years and served as her youth pastor when she was in middle and high school and therefore have had extensive knowledge of her character throughout life. As such, I am pleased to write a letter of recommendation on her behalf.

   Christy has always demonstrated great character and love for others. She was a leader in the youth group and was always concerned about the welfare of others. Even as a teenager many people would joke that, she was like a mother to many of the other students because she was always looking out for them and helping them. Christy shared her love of Christ through mission trips, and through her voice singing. I continued to watch Christy demonstrate great ethics and character as she served and lifted others up as a college student. As she became a wife and mother her character, honor and love for others has been more visible than ever. She has served in much volunteer positions associated with her children.

   I have apprised of the charges against Christy and I know in my heart that Christy is a Godly woman of exceptional moral character and high integrity. God can use all things to teach, admonish and strengthen his children. I know Christy has learned a valuable lesson and would never be involved with anything like this again. …"

b. <u>Brooke Horton</u> –
   " During the time I have known Christie, I have entrusted her to care for my daughter on trips and countless spend the nights at her home. She is an excellent mother and person. She is responsible and I trust her implicitly with the care of my child. I have also seen Christie in another role, as a parent to a student in my classroom. She played a very active role in her daughter's education, making sure her homework was completed, signing up for things our classroom needed, helping with anything I asked her to do in the classroom, and working with the school/parent organization.

   Christie is the type of person that you want to be a part of your life. She is loyal and kind, always wanting to help out when you need her, and a genuinely good and honest person. It was without hesitation, that I wrote this letter of character for her. It was my absolute pleasure to tell others about her character."

c. <u>Emily R. Tenry</u> –
   "I first met Christina when her parents moved to my family's church, Calvary Baptist Church, in Lenoir City, TN. I was 11; Christina was 12… During these early years, Christina and I were good friends, and I would often spend the night with her at her parent's house…

4

Fast forward to many years later, Christina's daughter and my daughter became best friends. The girls have spent numerous nights together, either at our house or at Christina's house… When my daughter stays at Christina's house, I never worry about her, and I always know she is being well taken care of…

Aside from being friends, the girls attended the same school, Lenoir City Middle School, where they both cheered and played volleyball together. During the busy seasons, Christina and I would communicate nearly every day to collaborate the plans for the week. We would plan out who was picking up the girls from school, who was taking the girls to practice and/or games, and who was bringing the girls a snack before practice/games (as most of the time we would prepare something from home, like a PBJ sandwich). Christina has always been very pleasant to coordinate with, always very organized, and always dependable. I have never had to worry about Christina not picking up the girls or doing something for them if she said she was going to. Christina has always been very active in her daughters' lives and is always in the stands cheering them on, whether it is cheer, volleyball, soccer or basketball. Aside from planning with me, I know she is always making plans, whether that be with her husband, her parents, or another mom, for her other two daughters' busy schedules. I can attest to her strength of character and devotion to her daughters.

I feel the need to write this letter to show the court that I think highly of Christina. Christina has always been there for me and is always willing to lend a helping hand. She is active in the community, church, and the school system. I am aware of the current charges Christina is facing, and I will continue to be thankful for our friendship."

d. <u>Sandra M. Towns</u> –

"Christie has always shown unconditional love towards her family. Growing up she was a "mother hen" to her two younger sisters, as she was their biggest supporter and cheerleader. I have watched her transcend this to a higher degree as a mother to her three precious daughters, ages 15, 13, and 10. She has a close, successful relationship with her daughters, and I can assure you that these girls need their mother in their lives on a daily basis. As a veteran educator, I can attest to the fact that the mother is an integral component in a child's life. Her children excel academically, socially, morally, and athletically. Parental influence determines these things early in a child's life, so much credit goes to Christie and her husband. I don't want to see anything change the childhood that her children have. Growing up is hard enough in this day and time without an event that breaks the spirit and hope and safety for a child. Research proves that Adverse Childhood Experiences (ACEs) and toxic stress have been linked to many

common health and behavioral issues later in life. These girls deserve and need the presence of their mother in their lives!

Besides being an A+ mom, Christie has always been willing to volunteer and assist her community with projects and events. Her positivity and cheerful-giving heart are always a bright spot at church, school, and community events. One yearly event that Christie has always assisted me with is a track meet in memory of my late husband. We are going on year 30 of this event, and I can assure you it is the support of people like Christie and her family that has allowed this tradition to continue."

e. <u>Rev. Dr. Richard DeMerchant</u> –
"This incident is unfortunate. I have only known Christina to be a kind, compassionate public servant with strong conviction regarding her family."

f. <u>Kala Poole</u> –
"Christie and I first met at Calvary Baptist Church in Lenoir City... I'd say we were in 6th or 7th grade… As we got older, and our lives became different, we always stayed close. Christie was busy raising a family, while I was off living happily and had not gotten there yet. I would go over to her house and sit and admire her being a mom. She is a great mother of three girls that are all kind, smart, and caring. She's raised them with the same heart and love we were raised with. She has taught them about God, love, and staying true to who they are. Even through all of this, when many would just run and hide, she has stayed by their side. She has been at every game, every event, because she knows that no matter what comes of any of this, those girls are her world."

The excerpts above illustrate that Mrs. Myers is known to give her time and attention to her community and solidify her reputation as a caring and devoted mother. The following excerpts from family members reiterate this theme.

a. <u>Anita Wilmoth</u> –
" …It is my prayer, that this quite lengthy synopsis of Christie's life, will help to show her true nature. A person who gives, never expecting anything in return. A pleaser, always wanting to make life easier and happy for others, even if it means self-sacrifice. A daughter, who is loved and cherished. A sister who is a role model and example of exemplary motherhood. A mother and wife who'd do anything to ensure the happiness and contentment of her family. An amazing, thoughtful, reliable, selfless person, with an outstanding moral and ethical character, charm and grace, who shows kindness and

6

compassion to all she encounters. A person who has made a one-time mistake, acted outside of her normal character, but requests the mercy like that which our Heavenly Father extends to us all every single day of our lives. She has been an anchor, an influence, and an example for our entire family in one form or another. We would all be at a loss without her. Her family, especially her children would suffer greatly. It is my greatest request, and my uttermost prayer, that you will find favor with Christie and allow her to rise above this and prove herself to be the daughter, person, woman, wife and mother that we all know and love, as described above, by her very actions and deeds in days ahead. I beg that she be given the chance to show what her true character is and will continue to be for the rest of her life, with the mercy shown from this request. Please allow her not to be separated from our family or her children through imprisonment, but grant her some sort of probationary lifestyle sentencing that will prove to the court that mistakes can be forgiven, and she can begin to rebuild her life with the honesty, integrity and character she truly has. I truly feel that she will never commit or be charged with another offense in the future."

b. <u>Erica E. Oakes</u> –

"My three nieces adore their mother and have such an amazing bond with her. These girls look forward to so many precious moments in their daily lives with their mother. [redacted] the oldest is anxiously awaiting her first prom that her mother will get her ready for, the middle [redacted] loves looking up to the bleachers to see her mother's face as she carries on the legacy of their favorite sport; volleyball, and the baby [redacted], who is still working on her separation anxiety, is proud to celebrate little triumphs with her mother like staying the night away from home once in a blue moon.

Christie has also made several sacrifices for me in particular that I am so grateful for. There was a time in my life when I did not have a place to call home and Christie without hesitation offered for me to live under her roof with her family. During this time, I was able to first hand see the mother and wife she is and it made me long for my own. Fast forward to present day, I am now married and recently had a daughter of my own, who is not quite 3 months old. Christie has been there every step of the way and even took part in the actual birth of my daughter. She has since offered her time to come sit with my daughter, while I have been working and unable to pay for childcare."

c. <u>Amanda E. Flenniken</u> –

"… Christie was always the second mother to our youngest sister. I was quick to move out once I graduated high school and move to San Diego for college, but not Christie. She stayed and went to UT so she could help my parents with my little sister, getting her to and from school and sporting

events. Christie has always gone over and beyond for her family, she has always excelled in anything she put her mind to. She has always been a role model for me, and I admire how she always sees the good in people when others can't. Christie sacrifices so much for her family and she is the most selfless person I know. I have 2 daughters myself and Christie knows during tax season how swamped I am, and with my husband being a golf pro he travels a lot, so Christie is always there to pick up the pieces I can't juggle during tax time. My toddler used to call her aunt mommy because she is literally like a second mother. I was diagnosed with cancer in 2018 and just finished my last round of treatment in Dec 2019. Christie was the one who not one time cried but encouraged me to stay strong. When I felt sorry for myself she came and lifted me up, watched my girls for me, made me laugh and made me see this was a minor speed bump but it was all in God's hands…

I pray you see the actual person she is, the loving caring, Christian woman Christie is. I know her girls would be lost without her, my family would be lost without her and I know her husband would be devastated without her. I pray you realize this was her minor speed bump and I encourage you to see the beautiful soul she is."

d. <u>Jason Myers</u> –

"My name is Jason Myers, and I work in education. I am writing on behalf of Christina Myers. Christina is my wife, and we have been married for nearly 17 years. I have known Christina since we were children and attended high school together. We have three beautiful daughters together who range from 11 to 16 years of age.

I have never been more shocked in my life than I was the moment I learned of the charges levied against Christina. It did not seem real, and in my measure completely out of character for the woman I have known for so long. I have never known her to take advantage of others nor have I ever witnessed her be anything but generous when working with others. I can think of countless examples of her demonstrating kindness to others and myself. Christina is an amazing mother to our daughters. They are her entire world, and she is theirs. I struggle to find the words to describe their relationship and the impact this will have on them. As a professional who works with children, I know firsthand the trauma children face if they lose a parent for any reason. I can only imagine it will be compounded for our girls. Christina provides them with stability. She is the parent who takes care of transportation, planning, shopping etc. Christina has always sacrificed to the wellbeing of our family, and I cannot imagine where we would be without her.

Despite the charges Christina is facing, I believe she is a kind and generous person who ultimately seeks to ensure the happiness of others. I know she

8

faces charges that suggest otherwise, but I firmly believe she is a good person and, more importantly, an amazing mother."

These excerpts from Mrs. Myers' family's letters also paint a picture of a nurturing daughter, sister, and mother who has earned the love and respect of her family through her kind-hearted, loving, and generous disposition. Her family's love for her and her love for her are steadfast.

## V. SENTENCING FACTORS TO CONSIDER

There are a litany of factors that must be considered in determining the appropriate sentence for Mrs. Myers. First, the court must examine the appropriate guidelines and calculate the applicable range of punishment for the offense. As the Court is well aware, the United States Supreme Court deemed the Guidelines "effectively advisory" in United States v. Booker, after finding the mandatory nature of the Guidelines as previously imposed was a violation of the Sixth Amendment. United States v. Booker, 543 U.S. 220 (2005). The Court held that any sentence imposed must be viewed in light of its overall "reasonableness" as applied to the defendant in question. Id. While the courts are still required to calculate and consider the ranges of punishment as determined by the guidelines, they court may also "tailor the sentence in light of other statutory concerns" including consideration of the factors set out at 18 U.S.C. § 3553(a) in addition to bases for departures that are set out within the guidelines. Id. In United States v. McBride, the Sixth Circuit explained that "while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant." 434 F.3d 470, 475 (6th Cir. 2006).

Following the calculation of the appropriate guideline level and ranges, the court should look to any potential grounds for downward departure set out within the guidelines that may be

applicable in a given case. Any factor or combination of factors may support downward departure, if it is not prohibited by the Guidelines and takes the case outside the "heartland of cases" contemplated within the guidelines. United States v. Coleman, 188 F.3d 354, 361 (6th Cir.1999) (en banc).

Next, the Court must examine the applicability of any grounds for an additional variance from the calculated guideline range in the instant case. Such grounds include any of the factors set out within 18 U.S.C. § 3553(a) however are not limited to those. After the Booker decision, "many of the very factors that used to be grounds for downward departure under the Guidelines are now considered by the district court—*with greater latitude*—under section 3553(a)." McBride, 434 F.3d at 476 (emphasis added). In fact, the Sixth Circuit points out "that there is not complete agreement among the courts over whether the Guideline-based 'departures' truly even exist at this point." Id. at 477. "The assertion that departures are obsolete has an element of truth—for there is now no mandatory guideline range from which to depart—and does properly shift the focus of our review to reasonableness." Id. A district court in the post-Booker era is mandated by Section 3553(a) to determining the appropriate sentence for a defendant based upon the totality of the circumstances surrounding the case and under the auspice of reasonableness. Included in this mandate is the instruction that the court "shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth" in the provision. 18 U.S.C. § 3553(a) (emphasis added).

Finally, after assessing the appropriate advisory range of punishment and addressing all of the enunciated factors for both departure and variance, the court may examine any additional factors in the case at issue that may be applicable or that would make the case one "outside the heartland" of cases that are contemplated by the specific section of the guidelines. The Supreme Court has

10

indicated that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

When examining the totality of the circumstances including both the conduct and Mrs. Myers' personal history, the Court has sufficient information to depart downward from the advisory guideline range to reach a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing.

### A. Grounds for Downward Departure

Courts have recognized that two distinct types of departures exist under the United States Sentencing Guidelines, those that are specifically proscribed and those that are unguided. Based on this recognition, courts have been granted wide discretion to examine each case and defendant individually and apply grounds for departure that may be applicable based on the totality and uniqueness of the case. See generally Koon v. United States, 518 U.S. 81, 113 (1996). When examining each section of the guidelines, the Commission instructs courts to "treat each guideline as carving out a heartland" which is a typical case that displays the type of conduct that the guideline describes. U.S.S.G., Chapter 1, Part A Introduction, 4(b) (Policy Statement) Departures. When a case arises that is outside this "heartland" or typical case that was contemplated by the guidelines as fashioned, a court has wide discretion to fashion an appropriate sentence through the use of departures. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." Id.

In determining if a case merits a departure, a court may utilize any factors, other than those specifically prohibited by the guidelines, which may alone or aggregated establish a sufficient basis for departure."[T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds from departure in an unusual case." Id; see United States v. Stewart, 154 F. Supp. 2d 1336, 1339–40 (E.D. Tenn. 2001). The United States Supreme Court and the Sixth Circuit have each approved of the evaluation of additional unlisted factors that may be guiding in granting departures so long as they are taken into account in the contemplation of the prohibitions and policy goals that are set out within the guidelines. See generally Koon v. United States, 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); United States v. Coleman, 188 F.3d 354, 361 (6th Cir.1999) (en banc).

After determining the applicability of a departure, the Court must next address the degree or range that is appropriate to depart in light of the unique issues of the case. See United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989). For example, the Sixth Circuit Court of Appeals approved a departure of three levels based upon a seventy-two-year-old defendant's age, physical condition, lack of danger to the public, lack of flight risk, and relatively minor role in the offense. United States v. Sabino, 274 F.3d 1053, 1079 (6th Cir. 2001). In the instant case, the Court is faced with an atypical defendant that remove this case from the "heartland" of cases that are contemplated by U.S.S.G. § 2B1.1.

1. **Bases for Departure-Unguided**

As previously noted, the Court is also permitted to engage in an "unguided" evaluation of additional bases for departure that are not necessarily proscribed within the guidelines. In examining the instant case, the Court is presented with a somewhat unique set of facts. Mrs. Myers is an individual with no prior criminal history whatsoever. Moreover, when approached by law

enforcement she cooperated fully with their investigation without counsel, providing an account of her actions and permission to search her property. Mrs. Myers has been exceptionally cooperative and remorseful throughout this entire process. She has also continued to be cooperative and compliant during the pendency of the case as noted by the office of probation and parole including following all requests and maintaining gainful employment. Mrs. Myers also presents a lack of danger to the public based on the nonviolent nature of the offenses at issue. Additionally, Mrs. Myers presents an extremely low risk of recidivism. This event was quite apparently a grave deviation from an otherwise law abiding and productive life.

Mrs. Myers has accepted responsibility and agreed to several substantial enhancements in reaching a plea in this case. This mother of three has accepted the fact that she will serve a term of imprisonment and face substantial restitution for her actions. This case, and particularly this defendant, are outside the heartland of cases contemplated by the guidelines and accordingly is ripe for a departure from the advisory guideline range.

### B. Grounds for Variance Outside Sentencing Range

As highlighted above, the <u>Booker</u> court in making the Guidelines advisory in nature, directed the court to a series of factors and considerations that should be examined in determining departures, variances, and the overall reasonableness of a sentence imposed. Specifically, courts have been directed to 18 U.S.C. § 3553(a) which provides a list of factors that are important to that determination, although not exclusive. The factors set out within that section provide in pertinent part as follows:

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;

13

    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the kinds of sentence and the sentencing range established for--
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
  (5) any pertinent policy statement;
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

  Additionally, the United States Supreme Court has provided some direction on downward variances. In <u>Gall v. United States</u>, the court directed appellate courts to "take the degree of variance into account and consider the extent of a deviation from the Guidelines," and "rejected an appellate rule that required 'extraordinary' circumstances to justify a sentence outside the Guidelines range." 128 S.Ct. 586, 594-95 (2007). In <u>U.S. v. Long</u>, 37 Fed. App'x 718 (6th Cir. 2002), the Court held that a sentencing court may depart from the applicable guideline range if the it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." <u>Id.</u>

  In the instant case, taking each of the enunciated factors, along with others that are not prohibited, the Court is presented with an individual who is uniquely situated for a substantial downward variance from the advisory guideline range.

1. **Nature and Circumstances of the Offense-18 U.S.C. §3553(a)(1)**

The seriousness of the offense cannot be understated. However, Mrs. Myers has been extremely cooperative and has accepted responsibility for her actions throughout the pendency of the investigation and disposition of the case. When confronted by law enforcement, she voluntarily spoke with agents, signed a consent to search her property, and provided documentation admitting to the conduct at issue. Mrs. Myers agreed to plead guilty and has completely accepted responsibility for her actions, including in her interview with the Office of Probation and Parole. See PSR page 10, paragraph 59. While the facts surrounding the offense are serious, the gravity of the offense conduct was sufficiently addressed in the negotiation of a plea agreement and inclusion of the applicable factual basis. Additionally, this was a nonviolent offense and Mrs. Myers presents no risk to the public as it relates to this conviction. Moreover, Mrs. Myers has done everything in her power to be cooperative and show that this was an aberrant event that she will never be involved in again along with showing that she is extremely remorseful.

2. **History and Characteristics of the Defendant-18 U.S.C. §3553(a)(1)**

   a. **Mrs. Myer's personal background, history, and characteristics**

Christina Myers is a 38-year-old married woman with three daughters, all under the age of 18. Mrs. Myers has led a law-abiding life up until and since the instant offense further displaying the inexplicable nature of the conduct at issue. The character letters as set out above describe a woman who has always been wholly devoted to her family and to her children. Mrs. Myers was raised locally and possesses a bachelor's degree. Mrs. Myers has always maintained a good record of employment, even following the entry of a guilty plea in this case. While she will stand a convicted felon following her term of imprisonment, her education will allow her to have an avenue for employment upon release. Moreover, as the Court is aware, this is a strong indicator of

rehabilitative and reintegrative success upon release. Mrs. Myers is blessed with a wonderful support system of family and friends who stand in support of her despite the conduct at issue in this case.

### 3. The Need for the Sentence Imposed-18 U.S.C. §3553(a)(2)

#### a. Reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense

Mrs. Myers is facing a substantial term of imprisonment for the offenses at issue. In negotiating a plea agreement, Mrs. Myers agreed to numerous enhancements beyond the loss amount to appropriately reflect the seriousness of the offense. Respectfully, Mrs. Myers would argue that the advisory guideline range originally agreed upon within the plea agreement, 51-63 months, paired with the agreed restitution amount, more than appropriately reflects the seriousness of the offense and establishes an appropriate advisory guideline range. Additionally, even if the court were to grant substantial downward variance in this matter, Mrs. Myers will be sentenced to a term of imprisonment paired with a substantial amount of restitution she will need to satisfy upon her release. These factors all appropriately outline the seriousness of the offense and provide punishment for the conduct. Accordingly, a sentence that substantially varies below the advisory guideline range, paired with court-imposed conditions and restitution, will sufficiently reflect the seriousness of the offense and provide just punishment.

#### b. Afford adequate deterrence, protect the public, and provide training or care to the defendant

Regardless of any departures or variances that may be granted by this Honorable Court, Mrs. Myers, an individual with no criminal history, will likely serve a term of imprisonment in the custody of the Bureau of Prisons for this offense. The imposition of a term in custody alone would be substantial enough to provide both general and specific deterrence in this case, however other

alternatives that can be paired with any term imposed can also work to create a heightened deterrent effect.

Moreover, Mrs. Myers will be a convicted felon and will experience all the repercussions of such a status for the rest of her life. The repercussions of her actions will have a lasting effect on every aspect of her life, providing a substantial and continuing specific deterrence to criminal activity. Among those consequences is a loss to her family. Mrs. Myers will miss years with her children. She will likely miss many of the most significant adolescent events of each of her daughters, including at least one high school graduation. These are all punishments that she will face in addition to a term of imprisonment, a term of supervised release, and a substantial amount of restitution in this case. Each of these aspects, while they cannot be considered alone, are critical in assessing the deterrent effect on future conduct of Mrs. Myers and others. Accordingly, this punishment is more than sufficient to not only provide punishment and work to protect the public in the future, but also to provide general and specific deterrence.

### 4. Avoid Unnecessary Sentencing Disparities-18 U.S.C. §3553(a)(6)

The Court here is presented with a white-collar offense, involving fraud as recognized by the factual basis for the plea agreement. Significantly, the Sixth Circuit Court of Appeals addressed sentencing in white collar cases in some depth in United States v. Musgrave in 2016. United States v. Musgrave, 647 Fed. Appx. 529 (6th Cir. 2016). Mr. Musgrave was convicted following a jury trial of four counts including wire and bank fraud, establishing an advisory guideline range of 57-71 months imprisonment. Musgrave at 532. The sentencing court's original sentence was vacated and remanded and upon resentencing, the court imposed a sentence of one day imprisonment, five years of supervised release with 24 months of home confinement, and a $250,000 fine. Id. at 533.

17
Case 3:18-cr-00167-KAC-DCP   Document 34   Filed 10/20/20   Page 17 of 20   PageID #: 295

On appeal, the Sixth Circuit upheld this sentence as substantively reasonable and an appropriate downward variance from the advisory guideline range.

In assessing the district court's consideration of 18 USC §3553(a)(6) and various sentencing statistics, the Sixth Circuit Court of Appeals noted as follows:

> Based on the district court's review of statistics and other cases, of all white-collar defendants in our circuit, nearly 30% receive no prison time, and approximately one-third of that 30% receive some form of home confinement instead.

Id. at 538.

The Sixth Circuit also noted "[t]here is reason to believe that, because the loss Guidelines were not developed using an empirical approach based on data about past sentencing practices, it is particularly appropriate for variances." Id. citing United States v. Corsey, 723 F.3d 366, 379 (2d Cir.2013) (internal citations omitted).

While the specific facts and sentence imposed in Musgrave were clearly an outlier, the logic and analysis used in affirming the sentence are critical to review here. The Sixth Circuit noted that it is not only common practice of courts in our circuit to vary substantially below the advisory range in non-violent white-collar cases, but also that it may be encouraged considering the lack of empirical support for the loss guidelines. In examining the instant case, it is worth considering that nearly one third of white-collar defendants in the Sixth Circuit received no prison time whatsoever, some of which affected far greater loss amounts than Mrs. Myers. Moreover, various courts within our circuit have not hesitated to formulate a sentence that utilizes a combination of imprisonment, home confinement, community service, and substantial restitution to affect the goals of 18 U.S.C. §3553. As noted by the Sixth Circuit, the district court's reasoning in Musgrave which determined that the 18 U.S.C. §3553 factors, paired with the need to provide restitution to the victims made

18

the sentence imposed reasonable. Applied here, numerous factors would support a substantial downward variance from the advisory guideline range.

### 5. Provide Necessary Restitution-18 U.S.C. §3553(a)(7)

Mrs. Myers has already agreed to the restitution amount owed to the victims in this case pursuant to her plea agreement. Significantly, Mrs. Myers will not be able to contribute to restitution while she is incarcerated. Courts have noted that the consideration of providing restitution to victims is one that, when taken in consideration with all the other factors set out in 18 U.S.C. §3553, can be relevant in granting a variance. For example, in United States v. Musgrave, the Sixth Circuit Court of Appeals upheld a substantial downward variance, noting that "the goal of obtaining restitution for the victims is best served by a non-incarcerated and employed defendant" and that "the Court can be responsive to the victim's need to be made whole, while also imposing a sentence that is sufficient but not greater than necessary to satisfy all other purposes of sentencing". United States v. Musgrave, 647 Fed. Appx. 529, 536 (6th Cir. 2016)(internal citations omitted).

Mrs. Myers would ask this Honorable Court to consider this factor, along with all the other factors set out within 18 U.S.C. §3553 in granting a downward variance in the instant case.

## VI. CONCLUSION

WHEREFORE, the Accused, Christina Erin Myers, respectfully moves this Honorable Court to grant a substantial variance in order to impose a sentence sufficient but not greater than necessary in the instant case.

RESPECTFULLY SUBMITTED this 20 October 2020.

                                          GREGORY P. ISAACS, BPR# 013282
                                          ASHLEE B. MATHIS, BPR #034342

THE ISAACS LAW FIRM
J. FRANKLIN AMMONS, BPR #031947
ASHLEE B. MATHIS, BPR #034342

618 South Gay Street, Suite 300
Post Office Box 2448
Knoxville, Tennessee 37901-2448
865.673.4953/(fax)673.4950
www.isaacslawfirm.com
gpi@isaacslawfirm.com

## CERTIFICATE OF SERVICE

      It is hereby certified that a true and correct copy of the foregoing pleading was filed electronically. Notice of this filing be forwarded via the Court's electronic filing system to all parties on the electronic filing receipt and/or by hand-delivery or by placing a true and correct copy of the same in the United States Mail with sufficient postage to carry the same to its destination.

Frank M. Dale, Jr.
United States Assistant Attorney General
Howard H. Baker, Jr. U.S. Courthouse
800 Market Street, Room 211
Knoxville, Tennessee 37902
865-545-4167/(fax)545-4176
Frank.Dale@usdoj.gov

      DATED this 20 October 2020.

                                          Gregory P. Isaacs